**UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS**

| | | |
|---|---|---|
| PAUL L. GEORGE, JR. and TAMI L. GEORGE, | ) ) ) | |
| Plaintiffs, | ) ) | Civil No. 13-11884-FDS |
| v. | ) ) | |
| STONEBRIDGE MORTGAGE COMPANY, LLC; AMERICAN MORTGAGE NETWORK, INC.; JPMORGAN CHASE BANK, N.A.; MORTGAGE ELECTRONIC REGISTRATION SYSTEMS, INC.; and FEDERAL HOME LOAN MORTGAGE CORPORATION, | ) ) ) ) ) ) ) ) | |
| Defendants. | ) ) ) | |

## **MEMORANDUM AND ORDER ON DEFENDANTS' MOTIONS TO DISMISS**

**SAYLOR, J.**

This is an action arising from a home mortgage foreclosure. Plaintiffs Paul and Tami George have brought suit against various mortgage company defendants, contending that the foreclosure on of one of their properties was illegal. The named defendants are Stonebridge Mortgage Company, LLC; American Mortgage Network, Inc.; JPMorgan Chase Bank, N.A. ("Chase"); Mortgage Electronic Registration Systems, Inc. ("MERS"); and Federal Home Loan Mortgage Corporation ("Freddie Mac").

Defendant American Mortgage filed a motion to dismiss on August 7, 2013. Defendants Freddie Mac, Chase, and MERS filed a motion to dismiss on August 22, 2013. For the following

reasons, the motions will be granted.[1]

## I. Background

The facts are set forth as alleged in the complaint unless otherwise noted.[2]

Plaintiffs Paul and Tami George own real property located at 96 Elm Street East in Raynham, Massachusetts ("the Raynham Property"). They also owned real property located at 10 Maple Avenue in Taunton, Massachusetts ("the Taunton Property").

On November 15, 2005, the Georges entered into a mortgage on the Raynham Property with defendant Stonebridge Mortgage Company, LLC.[3] Under the mortgage, Stonebridge made a loan of $397,000 to the Georges, who were obligated to repay the loan over thirty years. The Georges' monthly income at the time was $4,981.50; their monthly mortgage payments to Stonebridge were $2,850.13.

The Georges allege that "[a]s a result of" this loan, they entered into a mortgage with defendant American Mortgage Network, Inc., on the Taunton Property on June 30, 2006. (Compl. ¶ 16).[4] Their monthly mortgage payment to American Mortgage was $1,573.15. The Georges also allege that Stonebridge and American Mortgage lent them the money without a reasonable belief in their ability to repay the loans.

---

[1] Defendants Freddie Mac, Chase, and MERS also moved to strike the affidavit of Tami George on September 12, 2013. Plaintiffs did not respond. Because the allegations proffered in that affidavit do not affect the outcome of defendants' motions to dismiss, the motion to strike will be denied as moot.

[2] On motions to dismiss, courts can properly take into account documents attached to or incorporated into the complaint, facts susceptible of judicial notice, concessions in a plaintiff's response to the motion to dismiss, and official public records. *Newman v. Krintzman*, 723 F.3d 308, 309 (1st. Cir. 2013); *Watterson v. Page*, 987 F.2d 1, 3 (1st Cir. 1993). Any facts considered by the Court that were not alleged in the complaint fall under one or more of these categories.

[3] According to state records, Stonebridge was dissolved in June 2008. (Notice of Removal, Ex. C).

[4] The complaint also alleges that the Georges "used the proceeds from the Raynham Property to mortgage the Taunton Property with American Mortgage." (Compl. ¶ 15). It is unclear what is meant by this.

In January 2010, the Georges attempted to modify their mortgage agreement on the Taunton Property.[5] They allege they were denied a good-faith opportunity to do so.

On July 31, 2012, defendant MERS assigned the mortgage on the Taunton Property to defendant Chase. The Georges allege this assignment failed because MERS lacked the legal authority and standing to assign the mortgage.

On April 26, 2013, Chase issued a notice of foreclosure sale on the Taunton Property. On May 28, 2013, defendant Freddie Mac purchased the Taunton Property at the foreclosure sale. The Georges allege that there was no authority for this foreclosure because the mortgage was illegally assigned.

## II.     Standard of Review

On a motion to dismiss pursuant to Fed. R. Civ. P. 12(b)(6), the Court "must assume the truth of all well-plead[ed] facts and give plaintiff the benefit of all reasonable inferences therefrom." *Ruiz v. Bally Total Fitness Holding Corp.*, 496 F.3d 1, 5 (1st Cir. 2007) (citing *Rogan v. Menino*, 175 F.3d 75, 77 (1st Cir.1999)). To survive a motion to dismiss, the complaint must state a claim that is plausible on its face. *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). That is, "[f]actual allegations must be enough to raise a right to relief above the speculative level, . . . on the assumption that all the allegations in the complaint are true (even if doubtful in fact)." *Id.* at 555 (citations omitted). "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Twombly*, 550 U.S. at 556).

---

[5] The complaint alleges that the Georges tried to engage Chase in discussions to modify the Taunton Property mortgage in 2010. The complaint also, however, alleges that Chase was not assigned the mortgage until July 2012.

Dismissal is appropriate if plaintiff's well-pleaded facts do not "possess enough heft to show that plaintiff is entitled to relief." *Ruiz Rivera v. Pfizer Pharm., LLC*, 521 F.3d 76, 84 (1st Cir. 2008) (quotations and original alterations omitted).

## III.   Analysis

Plaintiffs make four claims against defendants.  First, they contend that Chase illegally foreclosed on their home without giving them a notice to cure as required by Mass. Gen. Laws ch. 244 § 35A.  Second, they contend that Stonebridge and American Mortgage funded high-cost loans to them in violation of the Massachusetts Predatory Home Loan Practices Act, Mass. Gen. Laws ch. 183C ("PHLPA").  Third, plaintiffs contend that defendants breached the implied covenant of good faith and fair dealing as to (apparently) both mortgage contracts.  Finally, they contend that their mortgages are void because they were made in violation of 940 CMR 8.00 ("the Regulations"), which address unfair or deceptive mortgages.

Defendant American Mortgage filed a motion to dismiss, contending (1) that the PHLPA claim is barred by the statute of limitations and the PHLPA does not cover the mortgage on the Taunton Property, (2) that the complaint does not properly allege a breach of the implied covenant of good faith and fair dealing, and (3) that the Taunton Property's mortgage is not subject to the Regulations.

Defendants Chase, MERS, and Freddie Mac also filed a motion to dismiss, contending (1) that the assignment of the mortgage from MERS to Freddie Mac was valid, (2) that the complaint fails to allege sufficient facts for breach of the implied covenant of good faith and fair dealing, (3) that the claim for failing to give a notice to cure is preempted by federal law, (4) that the PHLPA claim is barred by the statute of limitations, and (5) that private parties cannot bring

claims under the Regulations, the claim is time-barred, and the Regulations were not meant to apply retroactively.

### A. Claim for Failure to Give Notice to Cure

The complaint alleges that defendants failed to comply with Massachusetts law forbidding mortgagees from accelerating a mortgage loan before giving the mortgagor a written notice of their right to cure. Mass. Gen. Laws ch. 244 § 35A(g). A mortgagee is only allowed to accelerate a loan 150 days after it gives written notice. *Id.* Mortgagees seeking to foreclose must comply strictly with the requirements of § 35A. *See Silva v. Deutsche Bank Nat'l Trust Co.*, 30 Mass. L. Rptr. 369, at *3 (Nov. 14, 2012).

#### 1. Non-Foreclosing Defendants

Defendant American Mortgage contends that plaintiffs' claims against it should be dismissed because it did not foreclose on the Taunton Property. Plaintiffs have not responded to that argument. The complaint alleges that Chase was illegally assigned the mortgage and that Chase subsequently foreclosed on the Taunton Property. American Mortgage is not alleged to have foreclosed on the property or accelerated plaintiffs' loan. Therefore, it has not violated § 35A and those claims against it will be dismissed.

Likewise, defendants Stonebridge, Freddie Mac, and MERS are not alleged to have foreclosed on the Taunton Property or accelerated plaintiffs' mortgage loan. Because the statute only governs the actions of mortgagees who accelerate loans, the § 35A claims against those defendants will be dismissed.

#### 2. Defendant Chase

The complaint does allege that Chase foreclosed on the Taunton Property. Chase

contends, however, that § 35A is preempted by regulations promulgated under the National Bank Act, 12 U.S.C. § 1 ("NBA").  Plaintiffs have not responded to that argument.

As a national bank, Chase is subject to regulation by the Office of the Comptroller of the Currency ("OCC") as authorized by the NBA.  12 U.S.C. § 93a.[6]  The Supreme Court has "repeatedly made clear that federal control shields national banking from unduly burdensome and duplicative state regulation."  *Watters v. Wachovia Bank, N.A.*, 550 U.S. 1, 11 (2007).  "[W]hen state prescriptions significantly impair the exercise of authority, enumerated or incidental under the NBA, the State's regulations must give way."  *Id.* at 12 (citing *Barnett Bank of Marion Cty., N.A. v. Nelson*, 517 U.S. 25, 32-34 (1996)).

The question, then, is whether § 35A is preempted by federal law.  Chase contends the requirements of § 35A are preempted by OCC regulation 12 C.F.R. § 34.4(a)(4).  That regulation states:

> A national bank may make real estate loans under 12 U.S.C. § 371 . . . without regard to state law limitations concerning . . . [t]he terms of credit, including amortization of loans, balance, payments due, minimum payments, or term to maturity of the loan, including the circumstances under which a loan may be called due and payable upon the passage of time or a specified event external to the loan.

12 C.F.R. § 34.4.(a)(4).

In *Sloane v. JPMorgan Chase Bank, N.A.*, 2012 WL 7806163 (D. Mass. Mar. 27, 2012), the court found that § 35A limits "the circumstances under which a loan may be called due" and regulates the "term to maturity of the loan" by imposing requirements applicable to acceleration of mortgage loans.  2012 WL 7806163, at *1 (citing Mass. Gen. Laws ch. 244 §§ 35A(b), (g)).

---

[6] "Courts may take judicial notice that a bank is a national bank if the bank is described by name as a 'national' bank."  *In re Hollingworth*, 453 B.R. 32, 35 (Bankr. D. Mass. 2011) (citing *United States v. Harris*, 530 F.2d 576, 578 (4th Cir. 1976); *United States v. Thomas*, 610 F.2d 1166, 1171 (3d Cir. 1979); *United States v. Mauro*, 501 F.2d 45, 49-50 (2d Cir. 1974)).

Accordingly, the court held that the OCC regulation preempted Section 35A in that case.  *Id.*

The Court agrees with the reasoning in *Sloane*.  The OCC regulation states that national banks may make real estate loans without regard to state limitations regarding "term to maturity of the loan" and the "circumstances under which a loan may be called due."  12 C.F.R. § 34.4.(a)(4).  Section 35A clearly puts limitations on the term to maturity of real estate loans, and the circumstances under which they can be accelerated, by imposing a written notice requirement on national bank mortgagees attempting to foreclose.  Mass. Gen. Laws ch. 244 § 35A(g)-(h).  Section 35A is therefore preempted by the OCC regulation.[7]

Here, the complaint alleges that Chase was assigned the mortgage on July 31, 2012.  Chase is not alleged to have foreclosed on the Taunton Property in its role as a trustee.  Therefore, the OCC regulations promulgated under the NBA apply and preempt the requirements of § 35A.  Accordingly, the § 35A claim against Chase will be dismissed.

---

[7] In *Ross v. Deutsche Bank Nat. Trust Co.*, 933 F. Supp. 2d 225, 233 (D. Mass. 2013), the court determined that the same regulation did not preclude a Section 35A claim, given the circumstances of that case.  Specifically, the court analyzed whether Deutsche Bank had made or purchased a real-estate loan within the meaning of 12 C.F.R. § 34.4(a)(4) and 12 U.S.C. § 371.  *Id.*  The bank in that case was foreclosing on a mortgage in its role as the trustee of a mortgage company in bankruptcy.  *Id.* at 228-29.  Relying on a 2005 OCC Interpretive Letter, the court concluded that the bank had "neither originated the loan, funded the loan at inception, nor purchased the loans as part of any real estate lending program comprehended by the regulation" because it was acting as a trustee.  *Id.* at 233 (internal quotations and alterations omitted).  Accordingly, it determined that the bank did not fall within the aegis of the OCC regulations when acting on that particular mortgage and had to comply with § 35A.  *Id.*

*Ross* does not suggest a different result should be required here.  In *Ross*, Deutsche Bank was holding the mortgage in question as a trustee of a separate bankrupt company.  933 F. Supp. 2d at 228-29.  According to the OCC Interpretive Letter relied on by the court, 12 U.S.C. § 371 and 12 C.F.R. § 34.4 do not apply to banks foreclosing on mortgages as trustees because they are not making, selling, or purchasing those loans within the meaning of the statute.  OCC Interpretive Letter 1016, at *3 (Jan. 14, 2005).  Instead, banks are authorized to act as trustees by 12 U.S.C. § 92(a), which "does not insulate the assets the [b]anks hold in trust for the benefit of investors from state law requirements otherwise applicable to those assets."  *Id.*  Accordingly, *Ross* held that 12 C.F.R. § 34.4 did not apply to the mortgage in the case.  933 F. Supp. 2d at 233.  The court did not hold that the OCC regulation would not preempt § 35A if it did apply.

B.     **Claim for Predatory Lending Practices**

The Massachusetts PHLPA states that "[a] lender shall not make a high-cost home mortgage loan unless the lender reasonably believes at the time the loan is consummated that 1 or more of the obligors, will be able to make the scheduled payments to repay the home loan . . . ." Mass. Gen. Laws ch. 183 § 4. A high-cost home mortgage loan is defined as one "securing the borrower's principal dwelling and that either exceeds by more than eight percentage points (for a first mortgage) the yield on Treasury securities with a comparable maturity period, or features total points and fees the greater of five per cent of the total loan or $400." *Commonwealth v. Fremont Investment & Loan*, 452 Mass. 733, 748 n.24 (2008) (citing Mass. Gen. Laws ch. 183C § 2). Plaintiffs contend that the PHLPA makes the mortgage on the Taunton Property illegal. Defendants contend the Taunton Property mortgage is not a "high-cost home mortgage loan" as defined by the statute.

Plaintiffs have not provided any comparison with the yield on Treasury securities or presented any allegations that they incurred points and fees greater than five percent of the total loan, or $10,440. (Notice of Removal, Ex. D).[8] They have alleged no facts that would support the conclusion that the loan on the Taunton Property was a high-cost home mortgage loan.

Furthermore, a mortgage counts as a "high-cost home mortgage loan" as defined by the statute only if the mortgage is on the person's principal dwelling. Plaintiffs, however, claimed the Raynham Property as their principal dwelling under the Homestead Act, Mass. Gen. Laws

---

[8] Plaintiffs' proffered affidavit from Tami George states that Chase gave her a good-faith estimate for a settlement charge of $6,659.25 to modify the Taunton Property mortgage and avoid foreclosure. (Mem. in Opp. to Mot. to Dismiss for Failure to State a Claim, Dkt. No. 24, Ex. 1). That affidavit is the subject of a motion to strike. Even assuming the $6,659.25 would count towards a calculation of fees, it would still not qualify the Taunton Property mortgage as a high-cost home mortgage loan.

ch. 188, on June 2, 2013. (Blase Decl. Ex. B).[9] They have made no allegations as to which property was their principal dwelling at the time the mortgages were executed. They also failed, in their opposition, to respond to defendants' arguments. Plaintiffs have therefore failed to allege that the mortgage on the Taunton Property is a "high-cost home mortgage loan" under the PHLPA. Accordingly, those claims will be dismissed.[10]

### C.     Claim for Breach of the Implied Covenant of Good Faith and Fair Dealing

Plaintiffs contend that defendants breached the implied covenant of good faith and fair dealing between them as parties to either or both mortgage contracts. In Massachusetts, "[t]he covenant of good faith and fair dealing is implied in every contract." *Uno Restaurants, Inc. v. Boston Kenmore Realty Corp.*, 441 Mass. 376, 385 (2004). "Such a covenant requires 'that neither party shall do anything that will have the effect of destroying or injuring the right of the other party to receive the fruits of the contract.'" *Blank v. Chelmsford OB/GYN, P.C.*, 420 Mass. 404, 407 (1995) (quoting *Anthony's Pier Four, Inc. v. HBC Assocs.*, 411 Mass. 451, 471-72 (1991)). The covenant cannot, however, "create rights and duties not otherwise provided for in the existing contractual relationship, as the purpose of the covenant is to guarantee that the parties remain faithful to the intended and agreed expectations of the parties in their performance." *T.W. Nickerson, Inc. v. Fleet Nat. Bank*, 456 Mass. 562, 570 (2010) (quoting *Uno*

---

[9] The Taunton Property had already been foreclosed on by the time plaintiffs filed their Homestead Act declaration. Plaintiffs conceivably could have had their principal dwelling at the Taunton Property before foreclosure and moved to the Raynham Property afterward. In their opposition, however, plaintiffs did not respond to defendants' arguments that the PHLPA does not cover the Taunton Property mortgage because the property was not their primary dwelling.

[10] Defendants also contend that plaintiffs' predatory lending claims are barred by the five-year statute of limitations. *See* Mass. Gen. Laws ch. 183C § 15(b)(1). Plaintiffs contend that they can bring such a claim at any time after foreclosure under Mass. Gen. Laws ch. 183C § 15(b)(2). No cases appear to have addressed the issue of whether that provision of the statute establishes an indefinite limitations period with respect to an action to enjoin a foreclosure. *See Martins v. U.S. Bank, N.A.*, 2011 WL 4459135, at *1 n.5 (D. Mass. Sept. 26, 2011). The Court does not reach the merits of that issue.

*Restarants*, 441 Mass. at 385). Defendants contend that the complaint does not allege any injury to the rights of plaintiffs under the mortgage contracts. Plaintiffs did not respond to that argument in their opposition.

The only fact alleged in the complaint that could conceivably give rise to a breach of the covenant of good faith and fair dealing is the allegation that Chase denied plaintiffs a good-faith opportunity to modify the mortgage on the Taunton Property. Plaintiffs do not, however, allege that Chase or any other defendant was under an obligation to modify the mortgage or negotiate a modification. *See Adamson v. Mortgage Electronic Registration Systems, Inc.*, 2011 WL 4985490, at *4 (Mass. Super. Ct. Oct. 19, 2011) (dismissing good faith and fair dealing claims because defendant "was under no legal obligation to modify [plaintiff's] mortgage or to negotiate a modification"). Because the complaint does not allege facts that plausibly suggest that defendants failed to perform under the terms of any contract or that they injured plaintiffs' rights under a contract, the complaint fails to state a claim for breach of the implied covenant of good faith and fair dealing.

### D. Claim for Unfair or Deceptive Mortgage Practices

Plaintiffs also allege defendants violated the Massachusetts regulations governing mortgage brokers and lenders. *See* 940 CMR 8.00. Defendants contend that the Regulations do not give plaintiffs a private right of action to enforce their requirements. Plaintiffs did not respond to this argument.

Defendants correctly point out that the Regulations do not provide a private right of action. *See Corcoran v. Saxon Mortg. Services, Inc.*, 2010 WL 2106179, at *4 (D. Mass. May 24, 2010) (regulations "do not, however, provide the plaintiff with a private cause of action").

However, a claimed violation of the Regulations could be asserted in connection with a claim under Mass. Gen. Laws ch. 93A, the Massachusetts consumer-protection law. *See Rondeau v. Marathon Structured Asset Solutions Trust*, 2010 WL 3327691, at *3 (Mass. Super. Ct. Jul. 7, 2010) (treating alleged violations of 940 CMR 8.01 as Chapter 93A violations); *Thelemaque v. Fremont Inv. & Loan*, 28 Mass. L. Rptr. 430, at *6 (Mar. 23, 2011) (the same).

Even if plaintiffs were to bring their claims under Chapter 93A, such claims would be time-barred. The limitations period for claims under Chapter 93A is four years. Mass. Gen. Laws ch. 260 § 5A.

The general rule is that a cause of action under Chapter 93A accrues "when the plaintiff knew or should have known of the appreciable harm resulting from the defendant's [actions]." *Schwartz v. Travelers Indem. Co.*, 50 Mass. App. Ct. 672, 678 (2001). This discovery rule delays accrual beyond the time of injury if the plaintiff does not know and could not reasonably know that he or she "may have been harmed by the conduct of another." *Prescott v. Morton Intern., Inc.*, 769 F. Supp. 404, 408 (D. Mass. 1990). The discovery rule is narrow, generally applying only where the harm itself is "inherently unknowable." *Saenger Org., Inc. v. Nationwide Ins. Licensing Assoc., Inc.*, 119 F.3d 55, 65 (1st Cir. 1997); *see also Catrone v. Thoroughbred Racing Ass'n of N. Am., Inc.*, 929 F.2d 881, 886 (1st Cir. 1991).

"A violation involving issuance of a loan begins to accrue from the moment the parties entered into the loan." *Da Silva v. U.S. Bank, N.A.*, 885 F. Supp. 2d 500, 504 (D. Mass. 2012); *see also Maldonado v. AMS Servicing LLC*, 2012 WL 220249, at *5 (D. Mass. Jan. 24, 2012) (cause of action accrued when loan was made because any violation of Chapter 93A would not have been "inherently unknowable"). Plaintiffs allege that defendants acted unfairly,

deceptively, and unreasonably at the time the mortgage loans were made. Those loans were allegedly made on November 15, 2005 and June 30, 2006. Therefore, the limitations period on any claims arising from those loans expired on November 15, 2009 and June 30, 2010, respectively. This action was filed on July 17, 2013, long after the statue of limitations period had expired. Accordingly, plaintiffs' claims under the Massachusetts regulations will be dismissed.[11]

### E. Allegations of Unlawful Assignment

In the statement of facts, the complaint alleges that MERS illegally assigned the Taunton Property mortgage to Chase, and that therefore Chase did not have the authority to foreclose. Specifically, the complaint alleges the following:

> 22. [MERS] lacked the required legal authority and standing to assign the mortgage on Plaintiffs' Taunton Home. This alleged assignment of mortgage is void. [MERS] failed to legally assign the mortgage and note on Plaintiffs' Taunton Home. [Chase] lacked the required legal authority and standing in Plaintiffs' Taunton Home to legally foreclose.
>
> 23. On April 26, 2013, [Chase] issued a notice of mortgage foreclosure sale on Plaintiffs' Taunton Home for a foreclosure scheduled on May 28, 2013, at which time, Freddie Mac purchased Plaintiffs' Home. This foreclosure notice issued by [Chase] is void. [Chase] lacked the legal authority and standing to issue said notice of mortgage foreclosure sale concerning Plaintiffs' Taunton Home.

(Compl. ¶¶ 22-23).

The statutory power of sale is set out in Mass. Gen. Laws ch. 183 § 21. For a foreclosure sale pursuant to the power to be valid, the mortgagee must "first comply[] with the terms of the mortgage and with the statutes relating to the foreclosure of mortgages by the exercise of a

---

[11] Defendants also moved to dismiss plaintiffs' claims under the regulations because the regulations are not retroactive. *See* 940 CMR 8.08 ("The amendments to 940 CMR 8.00 shall be effective on January 2, 2008."). The Court does not reach that issue.

power of sale." Mass. Gen. Laws ch. 183 § 21. Those laws are codified at Mass. Gen. Laws ch. 244 §§ 11-17C. *Eaton v. Federal Nat. Mortg. Ass'n*, 462 Mass. 569, 581 (2012).

*Eaton* held that a foreclosing mortgagee must hold the mortgage and the mortgage note to lawfully foreclose on a property. 462 Mass. at 583-86. However, an entity that is the authorized agent of the note holder may stand in the shoes of the mortgagee and foreclose on a property. *Id.* at 586.

Here, defendants contend that under *Culhane v. Aurora Loan Services of Nebraska*, 708 F.3d 282 (1st Cir. 2013), MERS had the authority to assign the Taunton Property mortgage to Chase. In *Culhane*, the First Circuit found that MERS could validly assign its interest in a mortgage to another entity, even if it did not hold the mortgage note. *Id.* at 292. Accordingly, MERS was able to assign whatever interest it had in the Taunton Property mortgage in this case. *Culhane*, 708 F.3d at 291-94.

According to the Taunton Property mortgage document, American Mortgage held the mortgage note and MERS held the mortgage itself. (Notice of Removal, Ex. D).[12] If the assignment of either the mortgage note or the mortgage was invalid, Chase's foreclosure on the Taunton Property may have been illegal. *Eaton*, 462 Mass. at 583-86; *U.S. Bank Nat. Ass'n v. Ibanez*, 458 Mass. 637, 648 (2011).

However, the complaint here alleges as a *factual matter* that the assignment was invalid or improper, but fails to allege any *legal theory* upon which plaintiff might recover as a result. None of the four counts of the complaint allege any type of claim for unlawful foreclosure, whether cast as a claim under a state or federal statute or a common-law theory of recovery.

---

[12] Plaintiffs' complaint incorporates the Taunton Property mortgage document by reference.

Certainly such a claim is not included in plaintiffs' § 35A, PHLPA, breach-of-implied-covenant, or Chapter 93A theories. Accordingly, and notwithstanding the factual allegations of paragraphs 22 and 23, the complaint fails to state a claim based on a theory of unlawful foreclosure based on a lack of standing or interest in the property.

## VI. Conclusion

For the foregoing reasons, defendants' motions to dismiss are GRANTED. The motion of defendants Freddie Mac, Chase, and MERS to strike will be DENIED as moot.

**So Ordered.**

Dated: November 19, 2013

/s/ F. Dennis Saylor  
F. Dennis Saylor IV  
United States District Judge